**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| KENNETH BARBAGLI, JR., ) | |
| ) | Civil Action No. 11-4921 (JHR/AMD) |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| TRANS UNION, LLC, et al., ) | |
| ) | |
| Defendants. ) | |
| ) | |

---

**PLAINTIFF KENNETH BARBAGLI, JR.'S BRIEF IN OPPOSITION TO
DEFENDANT KEYPOINT GOVERNMENT SOLUTIONS, INC.'S
MOTION TO DISMISS THE COMPLAINT**

---

**FRANCIS & MAILMAN, P.C.**
MARK MAILMAN
JOHN SOUMILAS
GREGORY GORSKI
Land Title Building, 19th Floor
100 South Broad Street
Philadelphia, PA 19110
(215) 735-8600

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................... iii

PRELIMINARY STATEMENT ................................................................................ 1

PROCEDURAL HISTORY .................................................................................... 2

BACKGROUND ................................................................................................ 2

LEGAL ARGUMENT .......................................................................................... 5

I.   A WELL PLEADED COMPLAINT NEED ONLY ALLEGE CLAIMS THAT ARE
     NOT SPECULATIVE TO DEFEAT A MOTION TO DISMISS PURSUANT TO RULE
     12(b)(6) .................................................................................................... 5

II.  PLAINTIFF HAS ADEQUATELY PLEAD A CLAIM AGAINST KEYPOINT FOR
     VIOLATING FCRA SECTION 1681e(b) ........................................................ 7

     A.  KeyPoint Is A Consumer Reporting Agency Covered Under FCRA Section 1681e(b).... 7

     B.  KeyPoint By Definition "Prepares" Consumer Reports ................................... 10

     C.  Plaintiff Has Pled Sufficient Facts To Establish That A Plausible Claim Exists
         Against KeyPoint For Violations Of FCRA Section 1681e(b) ........................... 12

     D.  The Willfulness Of KeyPoint's Conduct Is A Jury Question ............................ 14

III. PLAINTIFF HAS ADEQUATELY PLEAD A CLAIM AGAINST KEYPOINT
     FOR VIOLATING FCRA SECTION 1681k ..................................................... 16

     A.  KeyPoint By Definition "Compiles" Information........................................... 16

     B.  Plaintiff Has Pled Sufficient Facts To Establish That A Plausible Claim Exists
         Against KeyPoint For Violation Of FCRA Section 1681k............................... 18

IV.  PLAINTIFF HAS ADEQUATELY PLEAD A CLAIM AGAINST KEYPOINT FOR
     VIOLATING THE NJCFA ......................................................................... 19

     A.  Plaintiff Has Plead His Claims Against KeyPoint For Violations Of The NJCFA With
         A Sufficient Degree Of Specificity To Set Forth A Plausible Claim For Relief. .......... 19

     B.  Plaintiff Is Not Required To Plead Intent In Connection With His Claim Against
         KeyPoint For Violations Of The NJCFA...................................................... 21

     C.  Plaintiff Has Standing To Allege Claims Against KeyPoint For Violations Of The
         NJCFA ............................................................................................... 22

CONCLUSION ................................................................................................ 23

## <u>TABLE OF AUTHORITIES</u>

### CASES

*al-Kidd v. Ashcroft*,
    580 F.3d 949 (9th Cir. 2009) ........................................................................ 12

*Allmond v. Bank of America*,
    2008 WL 205320 (M.D. Fla. Jan. 23, 2008) ............................................... 14

*Ashcroft v. Iqbal*,
    129 S. Ct. 937 (2009) ......................................................................... 6, 12, 15

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 554 (2007) ................................................................................ *passim*

*Buck v. Hampton Twp. Sch. Dist.*,
    452 F.3d 256 (3d Cir. 2006) ......................................................................... 6

*Cahlin v. General Motors Acceptance Corp.*,
    936 F.2d 1151 (11th Cir. 1991) ................................................................. 14

*Cairns v. GMAC Mortgage Corp.*,
    2007 WL 735564 (D. Ariz. Mar. 5, 2007) ................................................. 16

*Centuori v. Experian Info. Solutions, Inc.*,
    431 F. Supp. 2d 1002 (D. Ariz. 2006) ...................................................... 16

*Chapman v. United States*,
    500 U.S. 453 (1991) .................................................................................... 17

*Christensen v. Acxiom Info. Security Services, Inc.*,
    2009 WL 2424453 (W.D. Ark. Aug. 6, 2009) ....................................... 9,10

*Citizen Action v. Schering-Plough Corp.*
842 A.2d 174, 176 (N.J. Super  2003)……………………………………………..21

*Cortez v. Trans Union, LLC*,
617 F.3d 688, 709 (3d Cir. 2010) …………………………………………………15

*Costlow v. United States*,
    552 F.2d 560 (3d Cir. 1977).......................................................................... 6

*Cox v. Sears Roebuck & Co.*,
    647 A.2d 454 (N.J. 1994)........................................................................... 21

*Dalton v. Capital Associated Industries, Inc.*,
　　257 F.3d 409 (4th Cir. 2001) ............................................................. 9

*Edwards v. Toys "R" Us*,
　　527 F. Supp. 2d 1197 (C.D. Cal. 2007) ............................................ 16

*Fowler v. UPMC Shadyside*,
　　578 F.3d 203 (3d Cir. 2009)............................................................. 12

*Guimond v. Trans Union Credit Info Co.*,
　　45 F.3d 1329 (9th Cir. 1995) ....................................................... 14,16

*Howley v. Experian Information Solutions, Inc.*
　　___ F. Supp. 2d ___, 2011 WL 4469555, *10 (D.N.J. Sept. 27, 2011)...............................16

*J & J Sports Productions, Inc. v. 4326 Kurtz, Ltd.*

　　2008 WL 4630508 (E.D. Pa. Oct. 18, 2008)...................................... 12

*Katz v. Schachter*,
　　598 A.2d 923 (N.J. Super. 1991), *cert. denied*, 611 A.2d 646 (N.J. 1992) ............................. 22

*Lenox v. Equifax Info. Servs. LLC*,
　　2007 WL 1406914 (D. Or. May 7, 2007) ......................................... 16

*Lewis v. Ohio Professional Electric Network, LLC*,
　　190 F. Supp. 2d 1049 (S.D. Ohio 2002) ........................................... 17

*Lewis v. Ohio Professional Electric Network, LLC*,
　　248 F. Supp. 2d 693 (S.D. Ohio 2003) ............................................. 10

*Marrone v. Greer & Polman Const., Inc.*,
　　964 A.2d 330 (N.J. Super. 2009) ..................................................... 22

*Miller v. Beneficial Management Corp.*,
　　977 F.2d 834 (3d Cir. 1992)............................................................... 6

*Neveroski v. Blair*,
　　358 A.2d 473 (N.J. Super. 1976) ..................................................... 22

*Nietzke v. Williams*,
　　490 U.S. 319 (1989).......................................................................... 6

*Perez v. Trans Union, LLC*,
　　526 F. Supp. 2d 507, 509 (E.D. Pa. 2007)...............................................…..9

*Philbin v. Trans Union Corp.*,
 101 F.3d 957 (3d Cir. 1996)............................................................. 13,14

*Phillips v. County of Allegheny*,
 515 F.3d 224 (3d Cir. 2008)............................................................. 6,7

*Pinker v. Roche Holdings Ltd.*,
 292 F.3d 361 (3d Cir. 2002)............................................................. 6

*Poore v. Sterling Testing Systems, Inc.*,
 526 F. Supp. 2d 504 (E.D. Pa. 2007) ............................................. 9

*Price v. Trans Union, LLC*
 737 F. Supp. 2d 281, 289 (E.D.Pa. 2010)…………………………………..…16

*Romano v. Active Network Inc.*,
 2009 WL 2916838 (N.D. Ill. Sept. 3, 2009) ................................. 15

*Sames v. Gable*,
 732 F.2d 49 (3d Cir. 1984)............................................................. 6

*Scheuer v. Rhodes*,
 416 U.S. 232 (1974)........................................................................ 6

*Smajlaj v. Campbell Soup Co.*,
 782 F. Supp. 2d 84 (D.N.J. 2011) ................................................. 19

*Smith v. HireRight Solutions, Inc.*,
 711 F. Supp. 2d 426 (E.D. Pa. 2010) ........................................... 13, 15

*Smith v. Weeks*,
 2002 WL 31750203 (E.D. Pa. Dec. 9, 2002)................................ 6

*Stewart v. Credit Bureau, Inc.*,
 734 F.2d 47 (D.C. Cir. 1984)......................................................... 14

*Swierkiewicz v. Sorema N.A.*,
 534 U.S. 506 (2002)........................................................................ 5

*Torrance v. Cincinnati Mortgage Co.*,
 2009 WL 961553 (S.D. Ohio Mar. 25, 2009)............................... 9

*Umland v. PLANCO Financial Services, Inc.*,
 542 F.3d 59 (3d Cir. 2008)............................................................. 6

v

*U.S. v. Richardson*,
   418 U.S. 166 (1974)...................................................................................................... 22

## STATUTES & RULES

15 U.S.C. § 1681a............................................................................................... *passim*

15 U.S.C. § 1681e............................................................................................... *passim*

15 U.S.C. § 1681i...................................................................................................... 8

15 U.S.C. § 1681k........................................................................................ 1,16,18,19

15 U.S.C. § 1681n.................................................................................................... 14

15 U.S.C. § 1681o.................................................................................................... 14

N.J.S.A. § 56:11-32................................................................................................. 1,7

N.J.S.A. § 56:8-1.................................................................................................... 1, 22

N.J.S.A. § 56:8-2...................................................................................................... 21

N.J.S.A. § 56:8-19.................................................................................................... 21

Fed. R. Civ. P. 8......................................................................................................... 5

Fed. R. Civ. P. 9.................................................................................................... 19,20

Fed. R. Civ. P. 12.................................................................................................... 2,6

## OTHER SOURCES

Timothy J. Muris, *Prepared Statement of Federal Trade Commission on the Fair Credit
   Reporting Act*, Senate Committee on Banking, Housing and Urban Affairs, Washington,
   D.C. (July 10, 2003)...................................................................................................8

## PRELIMINARY STATEMENT

Defendant KeyPoint Government Solutions, Inc. ("KeyPoint") moves to dismiss Plaintiff, Kenneth Barbagli, Jr.'s, claims for violations of the federal Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681a, *et seq.*, and the corresponding violations under the New Jersey Fair Credit Reporting Act ("NJFCRA"), N.J.S.A. §§ 56:11-32(a), *et seq.*  KeyPoint argues that it is not a covered entity under the FCRA with respect to the claims raised by Plaintiff (violations of section 1681e(b) and 1681k) because it purportedly is not a consumer reporting agency. Alternatively, KeyPoint claims that, even if it is a covered entity, the claims were inadequately plead.  Both arguments fail in all respects.

KeyPoint is by definition a consumer reporting agency and is a covered entity subject to liability under the FCRA for the violations alleged by Plaintiff.  Moreover, Plaintiff has adequately plead all necessary elements in setting forth his claims for violations of the FCRA with sufficient degree of factual specificity to prove that his claims are plausible.  KeyPoint's arguments are replete with misstatements of law, misreadings of the relevant portions of the statute, and an obvious misunderstanding of the pleading standard for the FCRA violations set forth in the Complaint.  Defendant's arguments relative to the NJFCRA fail for the same reasons that its argument fails as to the federal FCRA.  Accordingly, KeyPoint's motion to dismiss Plaintiff's claims in this regard should be denied.

KeyPoint also moves to dismiss Plaintiff's claims for violations of the New Jersey Consumer Fraud Act ("NJCFA"), N.J.S.A. §§ 56:8-1, *et seq.*  KeyPoint again erroneously argues that the claim was inadequately plead.  On the contrary, Plaintiff has similarly plead all necessary elements in setting forth his claims for violations the NJCFA with a sufficient degree of factual specificity to prove that his claim is plausible.  KeyPoint plainly ignores the highly

detailed nature of the pleadings which set forth in sufficient detail the transgressions that give rise to the claim against KeyPoint under the NJCFA.  KeyPoint again suffers from a patent misunderstanding of the law and pleading standard for the NJCFA violation set forth in the Complaint.  For example, KeyPoint incorrectly argues the Complaint has been insufficiently plead because Plaintiff has not plead that KeyPoint acted with intent or under privity of contract with Plaintiff.  Yet neither of these are even elements of a claim under the NJCFA.  KeyPoint's motion to dismiss Plaintiff's claim under the NJCFA as such should be denied as well.

## PROCEDURAL HISTORY

On or about August 25, 2011, Plaintiff filed this consumer protection action against Defendants KeyPoint, Trans Union, LLC ("Trans Union"), Experian Information Solutions, Inc. ("Experian"), and Equifax Information Services, LLC ("Equifax") alleging claims for separate violations of the FCRA, NJFCRA and NJCFA.  *See* Docket No. 1.  Defendants Trans Union, Experian and Equifax have all filed Answers to Plaintiff's Complaint.  *See* Docket Nos. 9, 17, 27.  KeyPoint, however, has alone filed the instant Motion to Dismiss pursuant to Rule 12(b)(6).  *See* Docket No. 22.

## BACKGROUND

**A.    Plaintiff Was Twice Denied Employment As A U.S. Air Marshal  Because KeyPoint Reported False, Derogatory and Contradictory Tax Liens On Plaintiff's Credit Report Which Did Not Even Belong To Plaintiff.**

Plaintiff is a New Jersey resident from Pittsgrove, New Jersey, a veteran of the U.S. Marines, and a current Marine reservist.  *See* Compl., at ¶ 1.  He currently works part-time as a law enforcement officer and occasionally in construction to earn extra money.  Given Plaintiff's background in the military and in law enforcement, Plaintiff aspired to begin a career as an U.S. Air Marshal with the Transportation Security Administration ("TSA").  *See id.,* at ¶ 12.  Not only

did Plaintiff have an excellent background for this kind of work, the employment benefits and additional income that he would have received would have been substantial and dramatically improved the quality of his life.

Plaintiff applied for employment as an Air Marshal with the TSA in January 2011, and again in May 2011. *See id.* On both occasions, Plaintiff's application was rejected. *See id.* The reason Plaintiff's application was rejected was because of the contents of credit reports that KeyPoint prepared and sold to the TSA in connection with Plaintiff's applications for employment. *See* Certification of Gregory Gorski ("Gorski Cert"), at Ex. A, February 16, 2011 KeyPoint Credit Report; Ex. B, May 12, 2011 KeyPoint Credit Report. In both instances, KeyPoint falsely reported derogatory, inaccurate and patently contradictory tax liens that it purchased and resold from co-Defendants Equifax, Experian and Trans Union. *See* Compl., at ¶¶ 6-7, 9. All of the tax liens reported on the Keypoint reports do not belong to Plaintiff, but instead to Plaintiff's father's construction business. *See id.*, at ¶ 7.

|  | Experian | Equifax | Trans Union |
|---|---|---|---|
| **Tax Lien x748 ($5,752)** | X |  |  |
| **Tax Lien x317 ($29,073)** |  | X | X |
| **Tax Lien x530 ($5,752)** |  | X | X |
| **Tax Lien x911 ($25,278)** |  |  | X |

**Table Depicting the Inconsistent Nature of the Tax Lien Information Reported By KeyPoint**

Aside from being plainly false and highly disparaging to Plaintiff's reputation, the tax liens were fatal to Plaintiff's employment application with the TSA due to the TSA's bright-line rule that applicants for the position possess no tax liens. *See id.*, at ¶ 14. Moreover, Plaintiff also received no notice from any Defendant in connection with either application that derogatory

public record information was being reported about Plaintiff to the TSA until after Plaintiff was denied employment in further violation of Plaintiff's rights under the FCRA. *See id*. Plaintiff as such was forced to place his plans to work as an air marshal on hold and as a result has now brought this lawsuit.

**B. KeyPoint Does Nothing To Ensure That The Information In Its Credit Reports Are Reliable.**

KeyPoint is a self-proclaimed "leading provider of investigative and risk mitigation services to government organizations." *See* http://www.keypoint.us.com/AboutUs. As its own online marketing materials confirm, one of the primary products that KeyPoint sells to government organizations in connection with employment screening are "credit reports." *See* http://www.keypoint.us.com/Solutions/InformationAndData.

As a consumer reporting agency, the FCRA obliges KeyPoint to assure the accuracy of the information that it sells in credit reports. KeyPoint's own marketing materials even appears to laud the goal of providing accurate credit reports. For example, KeyPoint unabashedly touts the reliability of its reports stating that its

> international network of leaders, investigators and subject matter experts deliver individualized results that ensure each customer receives valuable outcomes. . .Our solutions combine industry best practices with customized technology to ensure quality, confidentiality and integrity.

*See* http://www.keypoint. us.com/AboutUs. KeyPoint's marketing also creates the impression that it is actively engaged in compiling the information it sells. For example, KeyPoint claims that it is "[t]aking full advantage of state-of-the-art technology" and "[u]sing our in-depth knowledge and understanding of information sources, we deployed a nationwide Network of researchers to gather primary sources" *See* http://www.keypoint.us.com/Solutions/ InformationAndData &  http://www.keypoint.us.com/ Solutions/Home.

Contrary to these lofty marketing slogans, KeyPoint does nothing more than copy data it obtains from other consumer reporting agencies when it sells a credit report regardless of whether the information is accurate or not.  In doing so, KeyPoint is simply selling a product that its customers could have easily obtained directly from Equifax, Trans Union and Experian themselves.  KeyPoint also notably does not even bother to identify and reconcile inconsistencies between the national consumer reporting agencies, information so that decisions are actually based on accurate information despite the fact that KeyPoint is uniquely suited to do so given that it has acquired the three national reports to resell.

**LEGAL ARGUMENT**

I.   **A WELL PLEADED COMPLAINT NEED ONLY ALLEGE CLAIMS THAT ARE NOT "SPECULATIVE" TO DEFEAT A MOTION TO DISMISS PURSUANT TO RULE 12(b)(6).**

Universally recognized as a notice pleading standard, Rule 8(a)(2) of the Federal Rules of Civil Procedure calls for a plaintiff filing a complaint in the federal courts to simply provide "a short and plain statement of the claim showing that the pleader is entitled to relief."  *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 555 (2007) ("A complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations."); *see also Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 513 (2002) (calling Fed. R. Civ. P. 8 a "simplified notice pleading standard.").

> When a federal court reviews the sufficiency of a complaint, before the reception of any evidence either by affidavit or admissions, its task is necessarily a limited one.  The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.

*Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974).[1]  "[T]he threshold level to be met by a plaintiff to withstand a motion to dismiss is very low."  *Smith v. Weeks*, 2002 WL 31750203, *5 (E.D. Pa. Dec. 9, 2002).

The Third Circuit after *Twombly* has consistently held that in considering a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) the Court shall:

> accept all factual allegations in the complaint as true and view them in the light most favorable to the plaintiff' and "determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief."

*Umland v. PLANCO Financial Services, Inc.*, 542 F.3d 59, 64 (3d Cir. 2008) (*quoting Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006) and *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)).  *See also Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (finding *Pinker* "remains an acceptable statement of the standard" and "finding [*Twombly*] confusing").  "Rule 12(b)(6) does not countenance . . . dismissals based on a judge's disbelief of a complaint's factual allegations."  *Twombly*, 550 U.S. at 556 (quoting *Neitzke v. Williams*, 490 U.S. 319, 327 (1989)).  "A well-pleaded complaint may proceed even if it appears 'that a recovery is very remote and unlikely.'"  *Id.* (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

To the extent *Twombly* or more recently *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), impacts the standard of review of a Rule 12(b)(6) motion, the opinion merely clarifies that a complaint must "raise a right to relief above the speculative level."  *Twombly*, 550 U.S. at 555.  The Third Circuit in *Phillips* noted that *Twombly* "'simply calls for enough facts to raise a reasonable

---

[1]  From the perspective of a motion for summary judgment, "the incomplete state of discovery alone should . . . precluded summary judgment on the merits."  *Miller v. Beneficial Management Corp.*, 977 F.2d 834, 845 (3d Cir. 1992).  *See also Sames v. Gable*, 732 F.2d 49, 51 (3d Cir. 1984) (reversing grant of summary judgment while answers to certain discovery requests remained outstanding).  "Where the facts are in possession of the moving party a continuance of a motion for summary judgment for purposes of discovery should be granted almost as a matter of course."  *Costlow v. United States*, 552 F.2d 560, 564 (3d Cir. 1977).

expectation that discovery will reveal evidence' of the necessary element." *Phillips*, 515 F.3d at

234 (*quoting Twombly*, 550 U.S. at 556).

## II.     PLAINTIFF HAS ADEQUATELY PLEAD A CLAIM AGAINST KEYPOINT FOR VIOLATING FCRA SECTION 1681e(b).[2]

### A.  KeyPoint Is A Consumer Reporting Agency Covered Under FCRA Section 1681e(b).

Plaintiff's Complaint alleges a claim against KeyPoint for violations of 15 U.S.C. §

1681e(b) of the FCRA which requires consumer reporting agencies to maintain reasonable

procedures to assure maximum possible accuracy in connection with preparing consumer

reports.[3]  *See* Compl., at ¶ 32(a).  KeyPoint, however, erroneously argues that it is somehow not

covered by this provision of FCRA.  KeyPoint's mistake results from its misreading of plainly

defined terms under the FCRA.

The text of 15 U.S.C. § 1681e(b) unambiguously applies to all consumer reporting

agencies:

> (b) Accuracy of report
> Whenever a **consumer reporting agency** prepares a consumer report it shall
> follow reasonable procedures to assure maximum possible accuracy of the
> information concerning the individual about whom the report relates.

15 U.S.C. § 1681e(b) (emphasis added).  Even if assuming *arguendo* that KeyPoint is correct

that it satisfies the definition of a "reseller" under the FCRA, the distinction make no difference

because a "reseller" by definition is a consumer reporting agency.  *See* 15 U.S.C. § 1681a(u) ("A

**reseller** means a **consumer reporting agency**…") (emphasis added).  This conclusion is

---

[2]       Plaintiff agrees with KeyPoint that the text of 15 U.S.C. § 1681e(b) and of N.J.S.A § 56:11-32(b) is the same.  KeyPoint further has adopted its arguments regarding its request for dismissal of Plaintiff's federal FCRA claim under section 1681e(b) in support of its request for dismissal of Plaintiff's corresponding claim for relief under the NJFCRA.  Plaintiff as such adopts his arguments as stated herein in support of his opposition to KeyPoint's request for dismissal of Plaintiff's claims for relief under the NJFCRA.  For the same reasons, Keypoint's motion to dismiss should be denied as to both the FCRA and NJFCRA.

[3]       The term "consumer report" within the statute is commonly used in practice interchangeably with the term "credit report."

reinforced by the Federal Trade Commission's own opinion that "persons who purchase consumer reports for resale (also known as "resellers") **are covered by the FCRA as consumer reporting agencies** and have all the obligations of other CRAs." Timothy J. Muris, *Prepared Statement of Federal Trade Commission on the Fair Credit Reporting Act*, Senate Committee on Banking, Housing and Urban Affairs, Washington, D.C., July 10, 2003 (emphasis added). The plain language found within the FCRA thus confirms that KeyPoint as a consumer reporting agency is obliged to follow the provisions of section 1681e(b).

KeyPoint's reliance upon FCRA section 1681e(e) to imply that it is not covered under FCRA section 1681e(b) is similarly misguided. Section 1681e(e) simply contains additional obligations which a "reseller" uniquely must comply with above and beyond its compliance duties under section 1681e(b).[4] Nowhere does the text indicate that the promulgation of section 1681e(e) exempts "resellers" from their obligations to comply with section 1681e(b).

To the contrary, Congress clearly possessed the foresight to distinguish when a "reseller" should be exempted from a provision which otherwise applies to a consumer reporting agency as is evident from a review of 15 U.S.C. § 1681i(f) relating to procedures for a disputed accuracy. Section 1681i(f)(a) is explicit that "except as provided in paragraph (2), *a reseller shall be exempt from the requirements of this section*." (emphasis added). Surely if Congress intended to exempt a "reseller" from the obligations of section 1681e(b) through its promulgation of section 1681e(e), a provision akin to that which is found in section 1681i(f)(a) would have been inserted somewhere in section 1681e(e). Yet no such provision exists anywhere within section 1681e.

Plaintiff's reading of this statute also comports with the majority of court decisions addressing the subject. For example, one court has summarized:

---

[4]     Plaintiff has not alleged claims against KeyPoint for violations of 15 U.S.C. §1681e(e). Therefore, this Court need not consider whether or not KeyPoint fulfilled its obligations under this separate provision.

> None of these provisions contains any language that explicitly exempts a reseller from the obligation to ensure the accuracy of the information it resells.  While section 1681e contains a provision explicitly addressing a reseller's obligation to establish reasonable procedures to ensure that its report is sold for proper purposes, this provision does not state that these are the only obligations of a reseller under the Act.  Nor does section 1681e state that a reseller has no obligation to establish procedures to ensure the accuracy of the information it resells.
>
> FCRA now specifically states that a reseller is, in fact, a *"consumer reporting agency."*  15 U.S.C. § 1681a(u)(emphasis added). . . it is a reliable indicator of what was intended by the term "reseller" in FCRA.
>
> Where Congress has chosen to limit a reseller's obligations under the Act, it has explicitly done so. Section 1681i, which provides procedures that a CRA must employ if a consumer disputes information contained in a CRA's consumer file, specifically provides for obligations pertaining only to resellers and specifically provides that resellers are otherwise exempt from the requirements of section 1681i. 15 U.S.C. § 1681i(f)(1).

*Poore v. Sterling Testing Systems, Inc*., 410 F. Supp. 2d 557, 566-567 (E.D. Ky. 2006) (citations omitted).

The *Poore* opinion is similarly echoed in the court opinions from this circuit.  *See, e.g., Perez v. Trans Union, LLC*, 526 F. Supp. 2d 504, 509 (E.D. Pa. 2007).  For example, the Court in *Perez* not only found that a reseller of credit information was covered under section 1681e(b), but that its purported failure to comply with section 1681e(b) because of the inaccuracies that it reported was ripe to be presented by a jury:

> Plaintiff here has presented sufficient evidence to survive summary judgment and can proceed to trial on its claim that [the reseller] failed to employ and follow reasonable procedures to assure the accuracy of its credit reports.

*Id.* at 509.  *See also Dalton v. Capital Associated Industries, Inc.*, 257 F.3d 409, 416 (4th Cir. 2001) (finding that reseller of public record information is consumer reporting agency and material issue of fact existed as to resellers liability under section 1681e(b)); *Christensen v.*

9

*Acxiom Info. Security Servs., Inc.*, 2009 WL 2424453, *5 (W.D. Ark. Aug. 6, 2009) (finding material issue of fact existed as to reseller's liability under section 1681e(b)).

KeyPoint's reliance solely upon an unpublished opinion from the Southern District of Ohio for support, *Torrance v. Cincinnati Mortgage Co.*, 2009 WL 961553 (S.D. Ohio Mar. 25, 2009), is also misplaced.  Putting aside that the opinion is not binding upon this Court, it bears noting that the opinion considered the adequacy of an inartfully plead Complaint filed by a *pro se* plaintiff.  *Id.* at *2.  The *Torrance* Court further was merely speculating that a section 1681e(b) claim was even alleged because the complaint was so poorly drafted.  *Id.* at *5.  Even more damaging is the *Torrance* court's erroneous reliance upon the opinion in *Lewis v. Ohio Professional Electric Network, LLC*, 248 F. Supp. 2d 693 (S.D. Ohio 2003), which involved an interpretation of the statute before critical amendments were adopted in 2003.  The Court in *Poore* appropriately negated the persuasiveness of the *Lewis* opinion finding:

> [*Lewis*] was made without the benefit of the 2003 amendments to the Act which, as stated, specifically provide that a reseller *is* a consumer reporting agency. Thus, under the plain language of the statute as clarified by Congress in 2003, any portions of FCRA applying to consumer reporting agencies also apply to resellers unless, of course, there is an explicit provision to the contrary.

410 F. Supp. 2d at 567.

### B.  KeyPoint By Definition "Prepares" Consumer Reports.

KeyPoint alternatively claims that it is not liable under FCRA section 1681e(b) because it purportedly did not "prepare" a consumer report.  This argument similarly fails because it unambiguously conflicts with a plain reading of the statute.  As was set forth above, KeyPoint is a consumer reporting agency.  The very definition of a consumer reporting agency under the FCRA contemplates that a consumer reporting agency engages in the preparation and sale of consumer reports:

> A "consumer reporting agency" means any person which, for monetary fees, dues or on a cooperative non-profit basis, regularly engages in whole or in part in the practice of **assembling or evaluating consumer credit information or other information consumers for the purpose of furnishing consumer reports** to third parties . . . .

15 U.S.C. § 1681a(f) (emphasis added).   KeyPoint as such cannot possibly be a consumer reporting agency that does not "prepare" consumer reports as such an argument simply defies credibility and common sense considering the manner in which "consumer reporting agency" is defined under the FCRA.

KeyPoint's fallback position is that Plaintiff has nonetheless failed to plead that a consumer report was prepared and sold about Plaintiff specifically.   This argument also fails right out of the gate.   Contrary to KeyPoint's claim, Plaintiff's Complaint is replete with averments regarding KeyPoint's preparation and sale of consumer reports include averments stating that:

- KeyPoint "has been reporting derogatory and inaccurate statements and information relating to Plaintiff." *See* Compl., at ¶ 6.

- KeyPoint "reported inaccurate and inconsistent information on the Plaintiff's consumer credit report about the tax liens." *See id.*, at ¶ 7.

- KeyPoint "[has] been reporting the inaccurate information through the issuance of false and inaccurate credit information and consumer reports that they have disseminated and resold to various persons, both known and unknown." *See id.*, at ¶ 11.

- "The basis for these job denials was the inaccurate information that appears on Plaintiff's consumer reports with [KeyPoint], which was a substantial factor for the denial." *See id.*, at ¶ 13.

- "At all times pertinent hereto, the above-mentioned credit reports were "consumer reports" as that term is defined by 15 U.S.C. § 1681a(d). *See id.*, at ¶ 31.

KeyPoint's argument in this regard is also remarkable in light of the documents that Plaintiff has already produced in connection with his initial disclosure obligations.   Plaintiff notably has already produced the two credit reports about Plaintiff that KeyPoint prepared and sold to the

TSA.  *See* Gorski Cert., at Exs. A and B.  The undersigned counsel even shared the reports with

counsel for KeyPoint informally before the instant Motion was filed.  *See id.*, at ¶ 3.[5]

### C.  Plaintiff Has Pled Sufficient Facts To Establish That A Plausible Claim Exists Against KeyPoint For Violations Of FCRA Section 1681e(b).

KeyPoint's generalized dissatisfaction with the quantum of facts that Plaintiff has pled

does not advance its arguments for dismissal.  A well pled complaint in the federal courts is not

meant to unearth every single fact or piece of information in existence in connection with a

claim.  The district court in *J & J Sports Productions, Inc. v. 4326 Kurtz, Ltd.,* succinctly

summarizes Defendants' misunderstanding:

> Defendants note that the Amended Complaint does not allege whether there was a
> cover charge to enter the bar on the night of the fight, the number of people present
> at the bar during the fight, and the number of television sets exhibiting the fight.
> Defendants contend that plaintiff probably had this information prior to filing the
> lawsuit and should have included these allegations in the Amended Complaint. It is
> not clear whether plaintiff had this information, but for purposes of a motion to
> dismiss, it is not relevant because the Rule 8 pleading "standard does not require
> 'detailed factual allegations.'"

2008 WL 4630508, at *4 (E.D. Pa. Oct. 18, 2008) (J. Yohn).

KeyPoint appears to have lost sight of the two most basic tenets of the opinions in

*Twombly* and *Iqbal*: (1) a plaintiff may not plead a cause of action that is devoid of any factual

support, and (2) a plaintiff may not substitute legal conclusions for facts.  *See Twombly,* 550 U.S.

at 555; *Iqbal*, 556 U.S. 662.  Neither *Twombly* nor *Iqbal* stand for the proposition that a plaintiff

is required to plead every single fact that he or she may possess.  *See al-Kidd v. Ashcroft*, 580

F.3d 949 (9th Cir. 2009) ("*Twombly* and *Iqbal* do not require that the complaint include all facts

necessary to carry the plaintiff's burden."); *Fowler v. UPMC Shadyside*, 578 F.3d 203 (3d Cir.

---

[5]      The cases KeyPoint cites for legal support of its argument in this regard are in effect nullified by these
circumstances because all the cases KeyPoint relies upon contemplate a situation where the consumer reporting
agency never actually prepared and sold a report unlike the cases at bar.

2009) ("Although plaintiff's complaint is not as rich with detail as some might prefer, it need only set forth sufficient facts to support plausible claims.").

Applying the proper standard as set forth above, Plaintiff's Complaint more than adequately sets forth enough facts that would give rise to plausible claims against KeyPoint including averments stating that:

- "[KeyPoint has] been reporting derogatory and inaccurate statements and information relating to Plaintiff and Plaintiff's credit history to third parties." *See* Compl., at ¶ 1.

- "The inaccurate information includes tax liens reporting with a balance against the Plaintiff which are believed to belong to Plaintiff's father and are associated with Plaintiff's father's construction business and not with Plaintiff according to the tax id number appearing on the liens. Accordingly, these liens should not be reporting at all on Plaintiff's credit reports." *See id.*, at ¶ 2.

- "Defendant KeyPoint also reported inaccurate and inconsistent information on the Plaintiff's consumer credit report about the tax liens. KeyPoint obtained the tax liens secondarily through Trans Union, Equifax and Experian and resold the same, reporting the tax liens inconsistently and inaccurately three different ways." *See id.,* at ¶ 9.

KeyPoint further misapprehends that Plaintiff's Complaint somehow must include a description of how KeyPoint's procedures were unreasonable.

> The mere fact that Plaintiff cannot, at this juncture, either articulate any particular procedures or policies that Defendant internally maintains or describe alternative procedures that Defendant should have considered or adopted is not fatal to the claim. Rather, such matters are particularly within the knowledge of Defendant and Plaintiff is not expected to plead such matters with specificity absent the benefit of discovery.

*Smith v. HireRight Solutions, Inc.*, 711 F. Supp. 2d 426, 435 (E.D. Pa. 2010) (J. Buckwalter).

KeyPoint's reasoning is further shattered by its wholesale failure to consider the Third Circuit's opinion in *Philbin v. Trans Union Corp.*, which sets forth the controlling precedent for cases filed in the Third Circuit alleging claims for violations of section 1681e(b). *See* 101 F.3d 957, 964-966 (3d Cir. 1996). In determining the quantum of evidence needed for a plaintiff to

withstand summary judgment in connection with a claim against a consumer reporting agency

for violations of section 1681e(b) the Third Circuit found that:

> plaintiff has produced sufficient evidence to survive summary judgment on the issue of reasonable procedures **merely by demonstrating that there were inaccuracies in the [consumer reporting agency's] report**. Moreover, even under the rule enunciated in *Stewart,* plaintiff has produced sufficient evidence from which a reasonable trier of fact could infer that [the consumer reporting agency] did not follow reasonable procedures. The court there stated that "[i]n certain instances, inaccurate credit reports by themselves can fairly be read as evidencing unreasonable procedures." As one specific example of such an instance, the court posited that **where there exist two or more inconsistent reports, and the inconsistency relates to inaccurate information contained in at least one of the reports, a jury could reasonably conclude that the defendant failed to follow reasonable procedures.**

*Id.* at 965-966 (citations omitted) (emphasis added). *See also Guimond v. Trans Union Credit Info. Co.*, 45 F.3d 1329, 1333 (9th Cir. 1995) (applying similar standard); *Cahlin v. General Motors Acceptance Corp.*, 936 F.2d 1151, 1156 (11th Cir. 1991) (applying similar standard);[6] *Stewart v. Credit Bureau, Inc.*, 734 F.2d 47, 51 (D.C. Cir. 1984) (applying similar standard).

Taking *Philbin* into account, Plaintiff here has unquestionably alleged a sufficient

quantum of evidence to plead a plausible claim simply by identifying the inaccuracies within the

report sold by KeyPoint and the inconsistent nature of the inaccuracies present within the reports.

Indeed, the holding in *Philbin* confirms that Plaintiff need not proffer any evidence at all about

KeyPoint's procedures even at the time of trial, making KeyPoint's motion to dismiss on this

subject highly misguided.

### D.  The Willfulness Of KeyPoint's Conduct Is A Jury Question.

Keypoint misconstrues that "willful" conduct is required in connection with a valid claim for

violations of the FCRA. *See* 15 U.S.C. §§ 1681n and 1681o (providing relief for consumer

---

[6]    It bears noting that the single unpublished opinion that KeyPoint relies upon as support for its argument comes from the Middle District of Florida which is part of the Eleventh Circuit and by all account appears to be directly at odds with the controlling precedent of the Eleventh Circuit set forth in *Cahill*. *See Allmond v. Bank of America*, 2008 WL 205320 (M.D. Fla. Jan. 23, 2008).

resulting from either willful or negligent conduct).  The "willfulness" of KeyPoint's conduct as

such speaks only to the degree of damages which Plaintiff is entitled to recover, but does nothing

to dispose of the underlying claim itself.  *See id.*  Accordingly, engaging in an analysis as to

whether KeyPoint's conduct is "willful" at the pleadings stage is unwarranted.  One court

provided a succinct account of the same error that KeyPoint makes here:

> [Defendant] argues that [plaintiff] does not allege sufficient facts to indicate a
> willful violation of FACTA. There is, however, no requirement that a plaintiff
> provide such specificity.  As indicated above, at this juncture, a plaintiff need only
> provide sufficient allegations to show that a claim is "plausible on its face." . . .
> The willfulness issue cannot always be resolved at the motion to dismiss stage
> since it may involve facts beyond the pleadings. . . . [plaintiff] has stated a valid
> FACTA claim and it is premature based on the complaint before us to resolve the
> willfulness issue.

*Romano v. Active Network Inc.*, 2009 WL 2916838, *3 (N.D. Ill. Sept. 3, 2009) (citations

omitted).  *See* also *Smith,* 711 F.Supp.2d at 435 (denying motion to dismiss in FCRA case

claiming willful violations of section 1681e(b))

KeyPoint appears to have lost sight of the fact that the holdings in *Twombly* and *Iqbal*

regarding the sufficiency of averments in a complaint was not a call to make a plaintiff prove his

or her case at the pleadings stage.  *See Twombly*, 550 U.S. at 545 ("Asking for plausible grounds

does not impose a probability requirement at the pleading stage").  Despite specific admonitions

in *Twombly* and *Iqbal* against doing so, KeyPoint erroneously argues that it is entitled to a

dismissal of Plaintiff's FCRA claims because Plaintiff has not proven "willful" conduct by

KeyPoint even though Plaintiff has sufficiently pled that KeyPoint's conduct was "willful."  *See*

Compl., at ¶¶ 21, 32.  The "willfulness" of a defendant's conduct in the context of FCRA

litigation is thus a classic question for the jury question.  *See  Cortez v. Trans Union, LLC,*  617

F.3d 688, 709 (3d Cir. 2010) ("the reasonableness of a credit reporting agency's procedures is

normally a question for trial unless the reasonableness or unreasonableness of the procedures is

beyond question.");  *Guimond v. Trans Union Credit Information Co.*, 45 F.3d 1329, 1333 ("The reasonableness of the procedures and whether [defendant] followed them will be jury questions in the overwhelming majority of cases").  *Howley v. Experian Information Solutions, Inc.*,___ F. Supp. 2d ___, 2011 WL 4469555, *10 (D.N.J. Sept. 27, 2011) (finding "sufficient evidence to go to a jury on the issue of whether [credit reporting agency] willfully violated the FCRA.") (J. Hillman); *Price v. Trans Union, LLC*, 737 F. Supp. 2d 281, 289 (E.D.Pa. 2010) (finding "a jury could reasonably find that Defendant acted in reckless disregard and summary judgment should be denied.")(J. Robreno)[7]

## III.   PLAINTIFF HAS ADEQUATELY PLEAD A CLAIM AGAINST KEYPOINT FOR VIOLATING FCRA SECTION 1681k.

### A.  KeyPoint By Definition "Compiles" Information.

Plaintiff's Complaint alleges a claim against KeyPoint for violations of 15 U.S.C. § 1681k of the FCRA. [8]   *See* Compl., at ¶¶ 32(b),(c).  KeyPoint, however, argues that it is

---

[7]     *See also Edwards v. Toys "R" Us*, 527 F. Supp. 2d 1197, 1210 (C.D. Cal. 2007) ("Willfulness under the FCRA is generally a question of fact for the jury.")*; Lenox v. Equifax Info. Servs. LLC*, 2007 WL 1406914, *6 (D. Or. May 7, 2007) ("the determination as to whether defendant's action or inaction rises to the level of willfulness so as to violate the statutory obligations of the FCRA is also a question of fact"); *Cairns v. GMAC Mortgage Corp.*, 2007 WL 735564, *8 (D. Ariz. Mar. 5, 2007) ("in this case, like in the overwhelming number of cases in which state of mind is dispositive, the issue of punitive damages is best left for the trier of fact to determine"); *Centuori v. Experian Info. Solutions, Inc.*, 431 F. Supp. 2d 1002, 1007 (D. Ariz. 2006) (declining to enter summary judgment on the issue of willfulness in a case involving the reasonableness of consumer protection procedures).

[8]     15 U.S.C. 1681k(a) states:

A consumer reporting agency which furnishes a consumer report for employment purposes and which for that purpose compiles and reports items of information on

consumers which are matters of public record and are likely to have an adverse effect upon a consumer's ability to obtain employment shall –

(1) at the time such public record information is reported to the user of such consumer report, notify the consumer of the fact that public record information is being reported by the consumer reporting agency, together with the name and address of the person to whom such information is being reported; or

(2) maintain strict procedures designed to insure that whenever public record information which is likely to have an adverse effect on a consumer's ability to obtain employment is reported it is complete and up to date. For purposes of this paragraph, items of public

16

somehow not covered by this provision of FCRA specifically because KeyPoint purportedly did not "compile" information as is set forth in the statute.   KeyPoint, however, is a consumer reporting agency as explained above.  The very definition of the term under the FCRA sets forth that a consumer reporting agency "engages in whole or in part in the practice of **assembling** or evaluating consumer credit information or other information."  15 U.S.C. § 1681a(f) (emphasis added).   "Assembling" and "compiling" are notably synonyms for each other.  *See* http://thesaurus.com/browse/compile; *Chapman v. United States*, 500 U.S. 453, 461-62 (1991) (holding that the Court will construe undefined terms in accord with their ordinary or natural meaning).   KeyPoint as such cannot possibly be a consumer reporting agency that does not "compile" information as such arguments once again defy credibility and common sense considering the manner in which a "consumer reporting agency" is defined under the FCRA. KeyPoint's argument here is nothing more than a failed play on words.[9]

To the extent that KeyPoint is again claiming by inference in this portion of its argument that it does not "assemble" information, Plaintiff respectfully refers the Court to Plaintiff's Argument at Section II.B., which refutes Keypoint's similar claim that it somehow did not "prepare" a consumer report.  In any event, Plaintiff has nonetheless adequate plead facts that substantiate that KeyPoint assembled, prepared and/or compiled information by pleading that "Keypoint obtained the tax liens secondarily through Trans Union, Equifax and Experian and

---

record relating to arrests, indictments, convictions, suits, tax liens, and outstanding judgments shall be considered up to date if the current public record status of the item at the time of the report is reported.

[9]    This sole opinion that KeyPoint relies upon to support its argument, *Lewis v. Ohio Professional Electronic Network, LLC*, 190 F. Supp. 2d 1049 (S.D. Ohio 2002), is plainly inapposite to the circumstances here because the defendants in that matter claimed they were "not 'credit reporting agencies' as they do not assemble, evaluate, or compile the arrest data information." *Id.* at 1057.  The defendants in *Lewis* were clearly not playing word games, but instead challenging their status as a consumer reporting agency as a whole.

resold the same, reporting the tax liens inconsistently and inaccurately three different ways." *See* Comp., at ¶ 9.

**B. Plaintiff Has Pled Sufficient Facts To Establish That A Plausible Claim Exists Against KeyPoint For Violations Of FCRA Section 1681k.**

Without repeating the proper standard for assessing the adequacy of the pleadings, even a cursory inspection of Plaintiff's Complaint reveals that Plaintiff has more than adequately set forth enough facts that would give rise to plausible claims against KeyPoint for violations of section 1681k including averments stating that:

- "Plaintiff applied for and has been denied employment with the Transportation Security Administration as an air marshal in or about January of 2011, and again in or around May 2011." *See* Compl., at ¶ 12.

- "The basis for these job denials was the inaccurate information that appears on Plaintiff's consumer reports with [KeyPoint], which was a substantial factor for the denial." *See id.*, at ¶ 13.

- "Plaintiff further received no notice from any Defendant in connection with either application that public record information was being reported about Plaintiff to the Transportation Security Administration until after Plaintiff was denied employment, if at all." *See id.*, at ¶ 14.

- KeyPoint "willfully and negligently failed to provide notice to Plaintiff that public record information was being reported for employment purposes in violation of 15 U.S.C §1681(k)." *See id.*, at ¶ 32(b).

- KeyPoint "willfully and negligently failed to employ strict procedures to ensure that public record information is complete and up to date." *See id.*, at ¶ 32(c).

KeyPoint, however, again misapprehends that Plaintiff's Complaint somehow must include a description of how KeyPoint's procedures were not "strict" in order to plead a plausible claim under section 1681k. KeyPoint notably offers no legal support from any court that supports its assertions. KeyPoint's misapprehension on the subject logically derives from its similar misunderstanding of the pleading standard for violations of section 1681e(b) relating to the "reasonableness" of KeyPoint's procedures. Since Plaintiff is not obliged to specifically explain

18

how KeyPoint's procedures were "unreasonable" while pleading his claim for violation of FCRA

section 1681e(b), Plaintiff most certainly should not be obliged to specifically plead how it is

that those procedure are not "strict."   The Court in *Smith* again aptly explained the fault with

KeyPoint's argument:

> there remains an issue as to whether Defendant followed "reasonable" procedures
> to ensure the maximum possible accuracy of the information.   Without an
> extensive analysis of what constitutes "strict" as opposed to "reasonable"
> procedures, it stands to reason that "strict" is necessarily a more stringent
> standard.   Accordingly, given the Court's findings as to the "reasonableness" of
> Defendant's procedures, we are precluded from making any conclusions as to
> whether Defendant followed strict procedures.   *See Dalton,* 257 F.3d at 417
> (finding that where there is a factual dispute as to whether a CRA followed
> reasonable procedures, there is necessarily a factual dispute over whether it
> followed strict procedures); *Adams v. Nat'l Eng'g Serv. Corp.,* 620 F.Supp.2d 319,
> 332 (D. Conn. 2009) (holding that "because the court has already found that there
> exists a factual dispute over whether [Defendant] followed reasonable procedures,
> the court necessarily holds that there exists a genuine issue of material fact as to
> whether it followed strict procedures.").

711 F. Supp. 2d at 439[10]

## IV.   PLAINTIFF HAS ADEQUATELY PLEAD A CLAIM AGAINST KEYPOINT FOR VIOLATING THE NJCFA.

### A.  Plaintiff Has Plead His Claims Against KeyPoint For Violations Of The NJCFA With A Sufficient Degree Of Specificity To Set Forth A Plausible Claim For Relief.

KeyPoint is mistaken that all claims filed pursuant to the NJCFA require pleadings that

satisfy specificity requirement under Rule 9(b).   "Some claims under the CFA may not require

pleadings complying with Rule 9(b)."   *Smajlaj v. Campbell Soup Co.*, 782 F. Supp. 2d 84,

98 (D.N.J. 2011) (J. Simandle).   An example of a claim which need not comply with Rule 9(b)

---

[10]     KeyPoint also seeks dismissal of Plaintiff's claim against it for violations of section 1681k based upon a similarly flawed argument that Plaintiff has not sufficient plead the "willful" nature of KeyPoint's non-compliance with FCRA section 1681k.   KeyPoint's argument in this regard is identical to its argument on this subject as it relates to Plaintiff's claims against KeyPoint for violations of FCRA section 1681e(b).   *See* Pl. Argument, at II.D. Plaintiff respectfully refers this Court to this section of his brief for Plaintiff's response to those allegations. Defendant's arguments here fail for the same reasons they fail as to Plaintiff's willfulness claim under FCRA section 1681e(b).

are claims under NJCFA that do not derive from "an affirmative misrepresentation or material omission." *Id.* Plaintiff's claims here are consistent with such circumstances.

Nonetheless, Plaintiff has plead his claim against KeyPoint for violations of the NJCFA with a sufficient degree of specificity to satisfy Rule 9(b) anyway. KeyPoint erroneously argues that Plaintiff has simply grouped all the Defendants together without distinguishing each Defendant's conduct pointing only to paragraph 50 of the Complaint. KeyPoint, however, has ignored the factual pleadings included in the Complaint which precisely explain how KeyPoint itself committed unlawful acts in violation of the NJCFA including that:

- KeyPoint has been "reporting derogatory and inaccurate statements and information relating to Plaintiff and Plaintiff's credit history to third parties." *See* Compl., at ¶ 6.

- "The inaccurate information includes tax liens reporting with a balance against the Plaintiff which are believed to belong to Plaintiff's father and are associated with Plaintiff's father's construction business and not with Plaintiff according to the tax id number appearing on the liens." *See id.*, at ¶ 7.

- "these liens should not be reporting at all on Plaintiff's credit reports." *See id.*, at ¶ 7.

- "Defendant KeyPoint also reported inaccurate and inconsistent information on the Plaintiff's consumer credit report about the tax liens." *See id.*, at ¶ 9.

- "KeyPoint obtained the tax liens secondarily through Trans Union, Equifax and Experian and resold the same, reporting the tax liens inconsistently and inaccurately three different ways." *See id.*, at ¶ 9.

- "Plaintiff applied for and has been denied employment with the Transportation Security Administration as an air marshal in or about January of 2011, and again in or around May 2011." *See id.*, at ¶ 12.

- "The basis for these job denials was the inaccurate information that appears on Plaintiff's consumer reports with Defendants, which was a substantial factor for the denial." *See id.*, at ¶ 12.

- "Plaintiff further received no notice from any Defendant in connection with either application that public record information was being reported about Plaintiff to the Transportation Security Administration until after Plaintiff was denied employment, if at all." *See id.*, at *¶ 14.*

- KeyPoint "engaged in unlawful practices by using and/or employing unconscionable commercial practices, misrepresentations, and false statements in connection with the sale of the plaintiffs' aforementioned credit reports in violation of the N.J.S.A § 56:8-2 of the NJCFA." (NJFCRA violations were previously plead specifically as to KeyPoint). *See id.*, at ¶¶ 40-45, 49.

Plaintiff struggles to ascertain what other information KeyPoint could possibly need to know in order to appreciate the factual underpinnings of his claim against KeyPoint specifically for violations of the NJCFA. Moreover, Plaintiff's use of "Defendants" collectively on occasion is appropriate because all Defendants are alleged to have independently engaged in certain conduct. Thus, Plaintiff has adequately plead that Keypoint engaged in unlawful conduct resulting in an ascertainable loss to Plaintiff that was caused by Keypoint's unlawful conduct. *See New Jersey Citizen Action v. Schering-Plough Corp.,* 842 A.2d 174, 176 (N.J. Super 2003), *cert. denied,* 178 N.J. 249 (2003) (*citing Cox v. Sears Roebuck & Co.,* 647 A.2d 454, 465 (N.J. 1994)).

## B. Plaintiff Is Not Required To Plead Intent In Connection With His Claim Against KeyPoint For Violations Of The NJCFA.

KeyPoint erroneously argues that Plaintiff must plead and otherwise establish intent in order to establish a claim against KeyPoint under the NJCFA. The NJCFA, however, does not track the legal standards of a claim for common law fraud. "When the alleged consumer-fraud violation consists of an affirmative act, intent is not an essential element and the plaintiff need not prove that the defendant intended to commit an unlawful act." *Cox*, 647 A.2d at, 462 . Plaintiff here has based his claim against KeyPoint upon its affirmative act of selling credit reports containing false, derogatory and contradictory information. Accordingly, Plaintiff has no obligation to establish intent against KeyPoint at trial let alone pleading it.

**C. Plaintiff Has Standing To Allege Claims Against KeyPoint For Violations Of The NJCFA.**

KeyPoint inexplicably argues that Plaintiff somehow lacks standing to sue KeyPoint for violations of the NJCFA.  KeyPoint's only support is its observation that the credit reports KeyPoint sold were not sold directly to Plaintiff.  This fact, however, does not confirm a lack of standing.

Standing is an analysis that a court may engage in to limit lawsuits filed by individuals based solely on ideologies, or when lawsuits are filed by individuals looking to protect the rights of others.  *See*, *e.g.*, *U.S. v. Richardson*, 418 U.S. 166 (1974) (dismissing case for lack of standing where taxpayer was asking court to compel  government to give him information on precisely how the Central Intelligence Agency spends its funds).  Plaintiff here makes no claims on behalf of an ideology or for the benefit of others.  On the contrary, Plaintiff is seeking relief *inter alia* for the harm caused to him when KeyPoint sold derogatory and inaccurate credit reports about him that cause him to be denied gainful employment.

To the extent KeyPoint is attempting to argue the NJCFA possesses some kind of a privity requirement, such arguments similarly fail.  "[P]rivity of contract is not required in a CFA claim."  *Marrone v. Greer & Polman Const., Inc.*, 964 A.2d 330, 335 (N.J. Super. 2009). *See also Katz v. Schachter*, 598 A.2d 923, 926 (N.J. Super. 1991) ("[P]rivity is not a condition precedent to recovery under the New Jersey Consumer Fraud Act, N.J.S.A. §§ 56:8-1, *et seq.*, since section 19 clearly grants a remedy to '[a]ny person who suffers any ascertainable loss.'")(*quoting* N.J.S.A. § 56:8-19 (2010)), *cert. denied*, 611 A.2d 646 (N.J. 1992); *Neveroski v. Blair*, 358 A.2d 473, 479 (N.J. Super. 1976) ("There is no provision that the claimant thereunder must have a direct contractual relationship with the seller of the product or service").  Therefore,

the fact that Plaintiff is not the purchaser of the credit report makes no difference to the adequacy of the claim.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that this Court deny Defendant KeyPoint Government Solutions, Inc.'s Motion to Dismiss the Complaint in its entirety.

Respectfully Submitted,

**FRANCIS & MAILMAN, P.C.**

*/s/ Gregory Gorski*
MARK MAILMAN
JOHN SOUMILAS
GREGORY GORSKI
Land Title Building, 19th Floor
100 South Broad Street
Philadelphia, PA  19110

23